# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

PATRICK LEXIS,
    *Plaintiff*,

v.                                        No. 3:18-cv-1403 (JAM)

BELLEMARE, *et al.*,
    *Defendants*.

## INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Patrick Lexis is a prisoner in the custody of the Connecticut Department of Correction (DOC). He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against four DOC officials. He principally alleges that his constitutional rights were violated when he was wrongfully accused and disciplined for a gang affiliation on the basis of a letter he wrote. I will allow some of Lexis's claims to proceed against some of the defendants.

### BACKGROUND

The complaint names the following four defendants: Lieutenant Bellemare, Lieutenant Ebgrle, Correctional Officer Lorenzen, and Jhon Aldi. Doc. #1 at 1. The following facts are alleged in the complaint and are accepted as true only for purposes of this initial ruling.

On February 6, 2018, at about 8:00 am, Lexis was preparing for recreation at Radgowski Correctional Institution when four correctional officers entered his housing unit. Doc. #1 at 5. Lorenzen asked if his name was Lexis, and he said yes. He was then taken to the "AP" room, where Bellemare instructed him to remove his clothing, bend at the waist, and spread his buttocks. In five years of incarceration, Lexis had never been asked to do this. Prior searches had only involved squatting and coughing. Bellemare repeated the order two more times before Lexis complied. When he did, a couple of officers snickered. *Id.* at 6.

1

Following the search, Bellemare took Lexis's state-issued glasses, causing him to experience migraines and blurred vision. *Id.* at 8. Lexis is blind without his glasses. He did not get his glasses back for two weeks. *Id.* at 10.

At 10:00 am, Bellemare returned and told Lexis that he was receiving a disciplinary report for security risk group involvement. *Id.* at 8, 19 (copy of the disciplinary report). The disciplinary report was written by Lorenzen on the basis of his review of an outgoing letter written by Lexis.[1] Lorenzen's report stated that he had "reviewed an outgoing letter authored by Inmate Lexis, Patrick #370866 in accordance with Administrative Directive 10.7 and State regulations 18-81-28 to 18-81-51." *Id.* at 19. In the letter, Lexis wrote the following words: "He kept trying to play me in front of everybody belittlen' me and a few bros. Plus he was Stack 9. So, you know bro, I lead heads follow we beat flames out of him." *Ibid.*

Lorenzen interpreted these sentences as a reference to a fight that Lexis was involved in at a different facility and as evidence of Lexis "referring to himself as a leader by writing that when he leads others will follow him." *Ibid.* Lorenzen further noted that "Stack 9" is an "identifier uniquely associated with the SRG [Security Risk Group] Bloods which means snitch," and concluded that the letter "shows his involvement and leadership with the SRG Bloods." *Ibid.* "For behaving in this manner uniquely associated with the SRG Bloods Inmate Lexis is in direct violation of AD 9.5 Security Risk Group Affiliation." *Ibid.*

The report reflects that it was reviewed and approved by Bellemare on February 6, 2018. *Ibid.* A box is checked on the form for "Administrative Detention" but does not indicate that Lexis was interviewed. *Ibid.*

---

[1] According to Lexis, this was the second time that Lorenzen had opened his mail, and the first time was when Lexis arrived at the facility in 2017. *Id.* at 16.

After Bellemare told Lexis that he was receiving a disciplinary report, Lexis was transferred to a restrictive housing unit. He informed the medical staff there that he struggled with depression. *Id*. at 8.

The following morning, Lorenzen told Lexis that he would be designated a security risk group member and sent to Phase 1 of the Security Group Risk Program at Northern Correctional Institution because of the disciplinary report. *Ibid.* Lorenzen told him that if he did not admit to the charge in the report, he would still be sent to Northern but would also receive sanctions of 90 days loss of phone, recreation, and commissary. *Id.* at 8-9 Lexis felt "forced" and with "Lorenzen coercing me due to his threats," he "ended up grabbing the pen," and "Lorenzen became elated when I start[ed] writing him a statement." *Id.* at 9.

On February 15, 2018, Lexis attended a disciplinary hearing before Lieutenant Ebgrle in his capacity as a disciplinary hearing officer (DHO). *Id.* at 9, 20. He pleaded guilty to the disciplinary charge without presenting any witnesses and refusing an advisor. *Ibid*. The disciplinary hearing form reflects the imposition of certain sanctions that are not readily intelligible. *Id.* at 20.

On February 27, 2018, Lexis was sent to solitary confinement at the supermax unit at Northern Correctional Institution. *Id.* at 9. "I was sent to NCI Supermax without a hearing called an SRG Review Committee." *Ibid.* Lexis remained in solitary confinement at NCI for nearly three months from February 27 to May 24, 2018. *Id.* at 14.

The complaint alleges seven counts, some of which combine different claims of legal violations. Count One alleges that defendants Bellemare and Lorenzen violated the Fourth and

3

Eighth Amendments when Lexis was required to bend and spread his buttocks as well as when Bellemare took his glasses away from him. *Id.* at 10.[2]

Count Two alleges that Lorenzen violated the Due Process Clause by opening and censoring his outgoing mail. It further alleges that Bellemare and Ebgrle were supervisors who "failed to see this depravity," and that Lexis was "put in segregation without due process." *Id.* at 10-11.

Count Three alleges that Lorenzen was "completely wrong in saying that stack 9 is behavior uniquely associated with SRG bloods" and that he violated the First Amendment by "decid[ing] to charge with a false SRG affiliation because of one word" and the use of terms that were not "fighting words." *Id.* at 11-12.

Count Four alleges that Lorenzen penalized Lexis despite the fact that his prison facility "does not have any rules published on words that are prohibited" or "a rule for using words that c/o Lorenzen claims were uniquely associated with SRG Bloods." *Id.* at 12-13.

Count Five alleges that Lorenzen violated the First Amendment because he "censored my outgoing mail due to my communication with an alleged gang member" and "by prohibiting my outgoing mail from reaching the addresse[e]." *Id.* at 13.

Count Six alleges that Ebgrle violated the Due Process Clause by not screening him for his mental health needs prior to subjecting him to solitary confinement at Northern Correctional Institution for three months from February 27 to May 24, 2018, and also for crediting the disciplinary report written by Lorenzen without doing any investigation. At the time he was

---

[2] The complaint also alleges violations throughout of the Connecticut Constitution as well as violations of state regulations and the Department of Correction's administrative directives. Because I would not exercise jurisdiction over this case in the absence of a federal law claim, I need not at this time evaluate the validity of any state law claims and will not reference these claims except to the extent that these standards may be integral to any federal law claim. *See, e.g.*, *Harris v. Taylor*, 441 F. App'x 774, 775 (2d Cir. 2011) (failure to comply with a state law or administrative directive does not by itself establish a violation of the Constitution).

placed in solitary confinement, he was "exhibiting psychosis[-]like symptoms like talking to [him]self, clapping loudly for no reason & laughing hysterically." *Id.* at 14.

Count Seven alleges that Lorenzen falsified the disciplinary report—that "he knew that the word 'Stack 9' along could not stick, so he fabricated and falsely stated" in the report that Lexis was referring to himself a gang leader. Lexis alleges that his reference to "I lead heads follow" was to a "particular quote derived from a book on Jimmy Hoffa" and that he was "inspired by his chutzpah and thought it sounded cool saying it in a letter." *Id.* at 15.

Lexis seeks injunctive relief in the form of an order that "throw[s] the SRG ticket out and return[s] him to a level 2 prison." *Id.* at 17. He also seeks declaratory relief and money damages. *Ibid.*

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro*

5

*se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Fourth Amendment and Eighth Amendment strip search*

Lexis alleges that Bellemare and Lorenzen violated his rights when they required him to submit to a strip search by means of bending and separating his buttocks for visual examination. A prisoner's claim that he has been subject to a strip search may implicate both the Fourth Amendment right to be free from an unreasonable search and seizure and the Eighth Amendment right to be free from cruel and unusual punishment. *See Harris v. Miller*, 818 F.3d 49, 56-65 (2d Cir. 2016) (*per curiam*). For purposes of a Fourth Amendment claim, a court should consider whether the inmate has exhibited an actual, subjective expectation of bodily privacy and whether prison officials had sufficient justification to intrude on the inmate's privacy in the manner they did. *Id.* at 57, 62-63 (factors to consider include the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it was conducted). For purposes of an Eighth Amendment claim, a court should consider if a strip search was done maliciously and sadistically, or for invidious reasons of intimidation, harassment, or embarrassment. *See id.* at 65; *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015) (*per curiam*).

Viewing the alleged facts in the light most favorable to Lexis, he was forced to submit to a strip search without any justification and in order to humiliate him. Accordingly, I will allow his Fourth Amendment and Eighth Amendment strip search claims to proceed. This is without prejudice to the rights of Bellemare and Lorenzen to show that they had a sufficient basis for the

strip search and that the search was otherwise effectuated in a manner that did not violate the Fourth Amendment or Eighth Amendment.

### *Eighth Amendment confiscation of glasses*

Lexis alleges that Bellemare violated his rights by confiscating his eyeglasses for two weeks, resulting in Lexis experiencing blurry vision and migraine headaches, as well as making his vision worse. The Eighth Amendment prohibits prison officials from being deliberately indifferent to the serious medical needs of prisoners in their custody. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prisoner who claims deliberate indifference to a serious medical need must satisfy two requirements. First, there is an objective requirement—that the prisoner's medical need was sufficiently serious (*i.e.*, that the prisoner suffered from an urgent medical condition involving a risk of death, degeneration, or extreme pain). *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). Second, there is a subjective requirement: that the defendant have acted recklessly (*i.e.*, with an actual awareness of a substantial risk that serious harm to the prisoner would result from the defendant's action or non-action). *See Spavone*, 719 F.3d at 138. It is not enough to allege simple negligence; instead, a prisoner must show that the defendant acted with the equivalent of a criminally reckless state of mind with respect to the prisoner's medical needs. *See Hilton v. Wright*, 673 F.3d 120, 122-23 (2d Cir. 2012); *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*).

The Second Circuit has held that the deprivation of prescription eyeglasses may satisfy the objective prong of the deliberate indifference standard. *See Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (reversing conclusion that sightlessness and headaches from confiscation of eyeglasses was not serious medical need). But here, however, the complaint is devoid of any

allegation that Bellemare deprived Lexis of his glasses for two weeks for any invidious reason or with reckless disregard for the effect on Lexis's health.

Accordingly, I will dismiss Lexis's Eighth Amendment claim arising from the temporary confiscation of his state-issued eyeglasses. Nor has Lexis pleaded a plausible claim for unreasonable seizure of property in violation of the Fourth Amendment or for a deprivation of property without due process, because he alleges that the glasses were not his own property but issued by the Department of Correction.

### *First Amendment interference with mail*

Lexis alleges that Lorenzen violated his First Amendment rights by opening and reading the letter in which he wrote "Stack 9," and by preventing that letter from reaching its intended recipient. It is well established that "a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citation omitted). Nonetheless, the Second Circuit has found that an isolated incident of mail tampering does not ordinarily violate the First Amendment. *Ibid.* To establish a viable claim for mail tampering in violation of the First Amendment, an inmate must establish "that prison officials regularly and unjustifiably interfered" with his or her legal mail. *Id.* (citations and internal quotation marks omitted); *see also ibid.* (noting that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received") (citing *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)).

"Restrictions on prisoners' mail are justified only if they further one or more of the substantial governmental interests of security, order, and rehabilitation and must be no greater

than is necessary or essential to the protection of the particular governmental interest involved. In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *Ibid.* (internal citations and quotations omitted). Outgoing legal mail "is subject to greater constitutional protection (than incoming mail) because of the lesser security concerns presented." *Id.* at 352.

In *Davis*, the Second Circuit dismissed a plaintiff's claim against defendants who had twice opened his legal mail when he was not present. If these allegations did not suffice to state a First Amendment claim, it follows that Lexis's allegation that Lorenzen opened two non-legal letters over a two-year period and prevented one of them from reaching its intended recipient also fails to state a claim. Lexis concedes that Lorenzen's actions were motivated by security concerns—a permissible interest for the Department of Corrections to pursue through limited restrictions on prisoners' mail—when he argues that Lorenzen "censored my outgoing mail due to my communication with an alleged gang member." Doc. #1 at 13.

Even if Lexis has alleged a plausible violation of the First Amendment, Lorenzen would be entitled to qualified immunity in light of the Second Circuit's decision in *Davis v. Goord* and the lack of any clearly established law as of February 2018 holding that it is unconstitutional for a prison official to review two outgoing letters in search of evidence of gang affiliation. *See Simpson v. City of New York*, 793 F.3d 259, 268 (2d Cir. 2015) (explaining how qualified immunity protects an officer from liability if "(1) his conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act"); *see also Rhinehart v. Gomez*, 205 F.3d 1352 (9th Cir. 1999) (unpublished table

9

decision) ("disruption and delay of Rhinehart's nonconfidential mail did not violate his First Amendment rights because Rhinehart's status as a gang member created a legitimate penological interest to monitor potential gang-related activities for the protection of prison staff and inmates"). Accordingly, I will dismiss Lexis's First Amendment claim insofar as it is based on his allegation that it was unlawful for Lorenzen to review his outgoing mail and to prevent delivery of one item of mail to its intended recipient.

### *First Amendment retaliation*

Lexis also alleges that Lorenzen, Bellemare, and Ebgrle violated his First Amendment rights by placing him in restrictive housing and eventually solitary confinement based on statements that Lexis wrote in the outgoing mail reviewed by Lorenzen. The basic requirements of a First Amendment retaliation claim are that a plaintiff engaged in speech protected under the First Amendment and that the defendant in turn took adverse action against the plaintiff because of the constitutionally protected speech or activity. *See Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015).

Lexis has alleged a plausible First Amendment retaliation claim. He claims to have engaged in protected speech in his letter, and he was subjected by defendants Lorenzen, Bellemare, and Ebgrle to restrictive housing and solitary confinement as a result of what he stated in the letter. *Cf. Jones v. Buchanan*, 2013 WL 1137618, at *3 (C.D. Ill. 2013) (denying summary judgment on First Amendment retaliation claim by prisoner against prison official who imposed discipline against prisoner on basis of prisoner's mailing of a gang member's obituary to prisoner's brother).

It is undoubtedly true that "prisons have a legitimate penological interest in stopping prison gang activity," *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003), and it may well be that

defendants had a sound basis to conclude from Lexis's statements in the letter that he should be subject to more restrictive conditions of confinement as a gang member. *See, e.g.*, *Williams v. Mierzejewski*, 401 F. App'x 142, 144 (7th Cir. 2010) (rejecting First Amendment challenge to confiscation of gang-related letter); *Myers v. Semple*, 2018 WL 3553336, at *5 (D. Conn. 2018) (dismissing First Amendment retaliation claim based on letter that prison officials could reasonably have interpreted to be discussing prisoner's gang responsibilities). But at this initial pleading stage the Court must credit Lexis's claim that there were no grounds for defendants to so conclude on the basis of what he wrote in the letter.

Although it is true that Lexis pleaded guilty to the disciplinary report, he alleges that this was because of a threat by Lorenzen. Therefore, I cannot conclude at this point in time that his plea of guilty was an admission that there was a proper or valid basis for the disciplinary charge. Accordingly, I will allow Lexis's claim for First Amendment retaliation to proceed.

### *Procedural due process restrictive housing and solitary confinement*

Lexis alleges that his rights to procedural due process were violated by his assignment for about a total of 108 days to restrictive housing, first at Corrigan from approximately February 6 to February 27, 2018, and then to solitary confinement at Northern from approximately February 27 to May 24, 2018. The standard analysis for a procedural due process claim "proceeds in two steps: a court first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

In the prison context, which involves persons whose liberty interests have already been severely restricted because of their confinement in a prison, a prisoner plaintiff cannot show a cognizable deprivation of "liberty" unless he can show that he was subject to an "atypical and

significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Following *Sandin*, the Second Circuit has explained that courts must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Davis v. Barrett*, 576 F.3d 129, 133-34 (2d Cir. 2009) (*per curiam* ); *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). Typically, restrictive confinements of less than 101 days do not implicate a liberty interest. *See Davis*, 576 F.3d at 133; *see also Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (prisoners have liberty interest against indefinite assignment to supermax facility); *Myers v. Semple*, 2018 WL at *4 (concluding that for purposes of initial review order that "placement in the SRG Program" amounted to "an atypical and significant hardship in relation to the ordinary incidents of prison life").

Viewing the facts in the light most favorable to Lexis, I conclude for initial review purposes that he was deprived of a constitutionally protected liberty interest. He was subject to restrictive housing and solitary confinement for an extended period of more than 100 days.

The next consideration is whether Lexis received the process that was constitutionally due. The procedural protections that are due to a prison inmate facing a disciplinary hearing are not as expansive as the due process protections for a criminal defendant standing trial. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1973); *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). Thus, for example, a prison inmate does not have the right to counsel or to confront witnesses against him. *See Sira*, 380 F.3d at 69 (citing *Wolff*, 418 U.S. at 567-70). On the other hand, an inmate must be given "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Ibid.* (citing *Wolff*, 418 U.S. at 563-67).

12

Moreover, there must be at least some evidence to support the findings made in the disciplinary hearing. *See Washington v. Gonyea*, 538 F. App'x 23, 25 (2d Cir. 2013).

Lexis does not deny that he was afforded notice of the disciplinary charge and a hearing but alleges that he was subject to coercion leading up to his guilty plea to this charge. Therefore, I conclude for these initial pleading purposes only that Lexis has sufficiently alleged that he did not receive the constitutional process that he was due. Accordingly, I will allow Lexis's procedural due process claim to proceed.

### *Substantive due process*

Lexis alleges what I understand to be a void-for-vagueness substantive due process claim on grounds that he was not on adequate notice of what words he could say in his outgoing mail to avoid being subject to disciplinary charges and SRG designation on grounds of gang affiliation. As noted above, I have already concluded that Lexis has alleged a liberty interest for initial review purposes.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A law or regulation whose violation could lead to deprivation of a liberty interest must be drafted with sufficient clarity to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and to "provide explicit standards for those who apply them." *Ibid*.

I will assume for present purposes only that a prison disciplinary rule is subject to a void-for-vagueness challenge. *See, e.g.*, *Castro v. Terhune*, 712 F.3d 1304, 1310 & n.3 (9th Cir. 2013). Viewing the alleged facts in the light most favorable to Lexis, I will allow his substantive due process claim to proceed on the ground that he did not have adequate notice that his conduct would subject him to the deprivation of liberty that he experienced. This ruling is of course

without prejudice to defendants' right to establish the degree to which Lexis was on fair notice of the conduct that may subject him to the discipline and restrictive conditions that were imposed.

### *Eighth Amendment solitary confinement*

In light of his mental health needs, Lexis alleges that his solitary confinement at Northern that resulted from Ebgrle's actions amounted to cruel and unusual punishment in violation of the Eighth Amendment. "Confinement in a prison or in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards." *Hutto v. Finney*, 437 U.S. 678, 685 (1978). But not all imprisonment is cruel and unusual. As noted above, in order to establish an Eighth Amendment violation, an inmate must show (1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) a sufficiently culpable state of mind on the part of the defendant official. *See, e.g.*, *Gonzalez v. Hasty*, 802 F.3d 212, 224 (2d Cir. 2015).

There is substantial authority to suggest that "the use of solitary confinement may cause grave harm, especially to inmates who have mental illness." *Tuttle v. Semple*, 2018 WL 2088010, at *6 (D. Conn. 2018). Accordingly, I will allow the Eighth Amendment claim to proceed for now but without prejudice to any showing that there was no clearly established law as of 2018 that the Eighth Amendment bars the use of solitary confinement. *See id.* at *4-*6 (discussing qualified immunity principles in solitary confinement context).

### *Defendant Aldi*

Lexis has named Jhon Aldi as a defendant but has not otherwise alleged any acts taken or involvement by Aldi. In order for a plaintiff to maintain a § 1983 constitutional claim against a defendant, a plaintiff must allege facts to show that the named defendant was personally involved in the alleged constitutional violation. *See Raspardo v. Carlone*, 770 F.3d 97, 116 (2d

Cir. 2014). Because Lexis has not done so as to Aldi, I will dismiss Aldi as a defendant in this action.

## CONCLUSION

The case will proceed as to plaintiff's Fourth Amendment and Eighth Amendment strip search claims against Bellemare and Lorenzen, as well as his First Amendment retaliation, procedural and substantive due process, and Eight Amendment solitary confinement claims against Lorenzen, Bellemare, and Ebgrle. Plaintiff's supplemental state law claims will proceed as well. All other claims are DISMISSED pursuant to 18 U.S.C. § 1915A(b).

The Court enters the following orders:

(1) **The Clerk shall** verify the current work addresses of defendants Lorenzen, Bellemare, and Ebgrle with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet, containing the Complaint and this Order, to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the Court on the status of those waiver requests on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** send plaintiff a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim

recited above. They also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by November 11, 2019. Discovery requests need not be filed with the Court.

(6) All motions for summary judgment shall be filed by December 11, 2019.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(9) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. As local court rules provide that discovery requests are not filed with the Court, discovery requests must be served on defendants' counsel by regular mail.

It is so ordered.

Dated at New Haven this 15th day of April 2019.

/s/ ***Jeffrey Alker Meyer***
Jeffrey Alker Meyer
United States District Judge