**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

PATRICK LEXIS,
*Plaintiff,*

v.

BELLEMARE *et al.*,
*Defendants*.

No. 3:18-cv-1403 (JAM)

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Plaintiff Patrick Lexis is a sentenced prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed this lawsuit *pro se* and *in forma pauperis* to challenge his treatment by prison officials pursuant to 42 U.S.C. § 1983. The defendants have filed a motion to dismiss all claims alleged in the amended complaint. I will grant the motion to dismiss.

**BACKGROUND**

The following facts are derived from the allegations in the amended complaint, Doc. #33,[1] and are accepted as true only for the purposes of this ruling. Lexis names the following eighteen defendants in their individual and official capacities: (1) Lieutenant Timothy Bellemare; (2) Correctional Officer Joshua Lorenzen; (3) Lieutenant Ebgrle; (4) Warden Stephen Faucher; (5) Captain Doughtery; (6) Lieutenant Conger; (7) Dave in Population Management; (8) District Administrator Edward Maldonado; (9) Dave, the Director of Offender Classification; (10) the Director of Psychological Services; (11) Captain Keith Lizon; (12) William Longo in Mental

[1] After the filing of the amended complaint, Doc. #33, and the briefing of the instant motion to dismiss, Doc. #45, Lexis filed another amended complaint, Doc. #50. Because Lexis has failed to file a motion to amend or to explain why he is amending the complaint and because the Court has stated it was unlikely to allow further amendment to the complaint after granting Lexis's first motion, Doc. #37, the Court declines to consider Lexis's second amended complaint.

Health; (13) Correctional Officer Messier; (14) Correctional Officer Perkins; (15) Correctional Officer Schmidt; (16) SRG Coordinator John Aldi; (17) Director of Security Antonio Santiago; and (18) Director of Security Christine Whidden. Doc. #33 at 2.

The bulk of Lexis's claims focus on a disciplinary ticket he received in early 2018 and which led to his security risk group ("SRG") member designation. At the time, Officer Lorenzen read and reviewed Lexis's outgoing personal correspondence, and subsequently issued an "SRGA ticket" for words or language Lexis used in a letter. *Id.* at 16-17 (¶¶ 40, 45). In the disciplinary ticket, Officer Lorenzen stated that Lexis had a leadership position within the gang known as the Bloods and used the term "stack 9" in his letter, which Officer Lorenzen stated was an "identifier uniquely associated with the SRG Bloods." *Id.* at 18 (¶ 53).

On the same day Officer Lorenzen reviewed Lexis's outgoing correspondence, he also reviewed one of Lexis's phone calls from September 28, 2017, during which Lexis is alleged to have used the term "stack 9." *Id.* at 40-41 (¶¶ 340-341).  At the time, Officer Lorenzen's job was to be a phone monitor, and his job description did not include reviewing outgoing mail. *Id.* at 41 (¶ 344). Lexis alleges that in issuing the disciplinary ticket Officer Lorenzen violated Connecticut Regulation 18-81-31(a)(9) on outgoing general correspondence, which provides that the person who issues the disciplinary report should not be the same person who conducted the mail review. *Id.* at 16 (¶¶ 41-42).

Lexis denied gang membership and alleges that his use of the term "stack 9" in his letter was "nothing more than 'jest'" and to be funny. *Id.* at 19 (¶ 58). He states that the term "stack 9" is "slang and ebonic," is used by rappers in music, and has no relation to the Bloods. *Id.* at 19 (¶ 61). Lexis alleges that he had no notice that using the term would subject him to disciplinary action. *Id.* at 19 (¶¶ 62-63). Lexis also contends that the phrase, "I lead, heads follow," which

also appeared in the letter, was a "form of expression derived from Jimmy Hoffa," and that he took it from a book related to witnesses to the JFK assassination. *Id.* at 19 (¶¶ 59-60).

Lexis further alleges that Administrative Directive ("AD") 9.5 references SRG-related items and behaviors, but not words or language. *Id.* at 19-20 (¶¶ 64-65). On January 31, 2018, a revision was proposed that added the word "communicating" to AD 9.5. *Id.* at 41 (¶¶ 345-46). Director of Security Whidden signed off on the revision on January 31, 2018. *Id.* at 42 (¶ 347). Lexis did not have notice of this change before he received his disciplinary report on February 6, 2018. *Id.* at 42 (¶¶ 348-51).

On February 6, 2018, Officer Lorenzen conducted a strip search of Lexis. *Id.* at 16-17 (¶ 45). Lexis was handcuffed and taken to the restrictive housing unit ("RHU") by Officer Lorenzen and three other correctional officers. *Id.* at 11 (¶ 1). He was first taken to a room to be strip searched. *Id.* at 11 (¶ 3). About six officers were present at the time. *Id.* at 11 (¶ 7). Lexis admits that, under AD 6.7, he can be ordered to "squat, bend over, cough & spread [his] buttocks so they can see [his] rectum," *id.* at 11 (¶ 4), but asserts that he did not understand these directions during the strip search, *id.* at 11 (¶ 5). As a result, Lieutenant Bellemare and Officer Lorenzen had to repeat the directions a couple times. *Ibid.* When Lexis performed the action, he heard the officers behind him begin to snicker, laugh, and try to cover their mouths with their hands. *Id.* at 11-12 (¶¶ 8-9). Lexis was uncomfortable, angry, depressed, and humiliated, and he felt extreme emotional distress that he "cannot eliminate [] from [his] mind." *Id.* at 12-13 (¶¶ 18-19, 22).[2]

[2] Lexis includes facts relating to two strip searches. The second search, which occurred on November 14, 2018 at a different correctional facility, involved Lieutenant Pearson and Correctional Officer Smith. Doc. #33 at 13-14 (¶¶ 25-32). Because neither person is a defendant in this case, I do not consider the facts relating to the second search.

When Officer Lorenzen issued Lexis the disciplinary ticket, he said that he and his supervisor would speak to Lexis the following day. *Id.* at 20 (¶ 68). The following morning, Officer Lorenzen came to Lexis's cell alone. *Id.* at 20 (¶ 69). He spoke with Lexis in an "isolation room" with Lexis handcuffed and shackled to a table. *Id.* at 20 (¶ 70). He would not listen to Lexis's explanation. *Id.* at 20 (¶ 71). Lexis alleges that Officer Lorenzen "first threatened [Lexis] with severe sanctions," then "simply 'coerced' an involuntary confession in order to seal the deal knowing the SRGA ticket was frivolous on its face." *Id.* at 20-22 (¶¶ 72, 88). He also told Lexis that he had written the disciplinary ticket in a manner that would see Lexis sent to Northern Correction Institution ("Northern"). *Id.* at 21 (¶ 82).

On February 15, 2018, Lexis attended a hearing with Lieutenant Ebgrle. *Id.* at 22 (¶ 90). Before Lexis sat down, Lieutenant Ebgrle told him that he was "not allowed to speak unless I tell you to, and if you do or say anything disrespectful I will end this hearing." *Id.* at 22 (¶ 91). Lexis told Lieutenant Ebgrle that Officer Lorenzen told Lexis to write a statement stating he was a Blood or else he would receive "90 days loss." *Id.* at 22 (¶ 94). Lieutenant Ebgrle did not believe Lexis and stated that he had already admitted he was a gang member and was therefore guilty. *Id.* at 23 (¶¶ 95-97). When Lexis denied being a gang member, Lieutenant Ebgrle told him that it did not matter what he said and asked whether he pleaded guilty or not guilty. *Id.* at 23 (¶¶ 98-100). Lexis pleaded guilty. *Id.* at 23 (¶ 103).

Lexis then told Lieutenant Ebgrle that he was dealing with severe depression and had a long history of mental health problems. *Id.* at 23 (¶ 104). He stated that he did not feel he should be sent to Northern because "[he is] not a leader." *Ibid.* Lieutenant Ebgrle said she would let Lexis know where he would be sent but did not do so. *Id.* at 23-24 (¶¶ 105-06, 109). Lieutenant

Conger, the unit manager for the RHU, told Lexis that he was going to Northern. *Id.* at 24 (¶ 112).

Lexis asserts that the "issuance of the disciplinary charge, coercion and resulting guilty finding deprived [him] of [his] First Amendment right to free speech." *Id.* at 25 (¶ 200). On April 6, 2018, Lexis filed a grievance regarding his SRG member designation and also wrote a letter to Deputy Warden Cepelak which was forwarded to defendant Maldonado for response. *Id.* at 39 (¶¶ 325-26).

Lexis was transferred to Northern on February 26, 2018. *Id.* at 27 (¶ 215). No defendant completed the Mental Health Clearance Form required under AD 9.4 before Lexis was transferred to administrative segregation status at Northern. *Id.* at 27 (¶¶ 213-14).

Lexis alleges that he suffers acute back pain from a prior fall in RHU in Corrigan-Radgowski Correctional Institution ("Corrigan-Radgowski"). *Id.* at 30 (¶ 234). He told the nurse on intake at Northern that he is an "able-bodied man who exercised regularly doing 500 push-ups and 500 squats 3 times a week." *Id.* at 30 (¶ 235). Upon examination, Lexis's blood pressure was very high. *Id.* at 30 (¶ 236). The nurse stated that it could be attributed to Lexis's stress levels or his current back pain. *Id.* at 30 (¶ 238).

On February 28, 2018, defendant Longo, a mental health worker, came to speak to Lexis's cell mate one-on-one outside the cell. *Id.* at 30 (¶ 240). When he asked Lexis to come out to speak with him, Lexis refused. *Id.* at 30-31 (¶ 241).

That same day, Lexis wrote to Captain Lizon requesting to be placed on "recreation alone" status because he feared for his safety after hearing inmates yell threats not to go to recreation. *Id.* at 31 (¶ 242). Recreation alone status is afforded to inmates who are not gang members, inmates who have been assaulted by members of their own gang, and informants. *Id.*

at 31 (¶ 243). After a few days where Lexis repeatedly stopped Captain Lizon to tell him he was not a gang member, Captain Lizon placed Lexis on recreation alone status. *Id.* at 31 (¶ 244). After the placement, Lexis was "harassed daily being called a rat, snitch, etc." *Ibid.*

On March 3, 2018, Lexis wrote to Longo asking to speak with him one-on-one about Lexis's ongoing depression, stress, back pain, and high blood pressure. *Id.* at 31 (¶ 245). Longo did not respond. *Ibid.* On April 9, 2018, Lexis wrote to the social worker about his depression but received no response. *Id.* at 31 (¶ 246). When Lexis spoke to her face to face, she told Lexis to write to Longo. *Id.* at 31 (¶ 247). Between March 30, 2018 and May 23, 2018, Longo spoke one-on-one with the inmate in the cell next to Lexis's. *Id.* at 31 (¶ 248). Lexis asked the inmate to tell Longo that Lexis needed to speak with him. *Id.* at 31 (¶ 249). Longo later came to Lexis's cell and said he would speak with him, but never did. *Id.* at 32 (¶ 250).

Lexis was experiencing "psychosis-like" symptoms such as talking to himself, clapping loudly every morning, laughing hysterically, paranoia, being "hyper responsive," and "massive free-floating anxiety." *Id.* at 32 (¶ 251). In April 2018, Lexis filed a grievance complaining that Longo was ignoring his complaints and requests. *Id.* at 32 (¶ 252).

That same month, Lexis complained about his lack of mental health treatment to Nancy Alisberg, a member of Disability Rights Connecticut, who was touring the housing unit. *Id.* at 32 (¶¶ 253-56). He also wrote to her. *Id.* at 32 (¶ 257). After Lexis wrote to Alisberg, Longo deliberately ignored Lexis. *Id.* at 32-33 (¶ 258).

Each morning, when Captain Lizon toured the housing unit, Lexis complained to him that he was "losing [his] mind in here" and that he needed help. *Id.* at 33 (¶ 267). Captain Lizon would respond, "But you have a radio in there." *Id.* at 33 (¶ 268). Lexis said that his headphones were broken and asked for a replacement, but Captain Lizon refused the request. *Id.* at 33 (¶¶

269-70). When Lexis stated that he had filed various requests and grievances about Longo, Captain Lizon stated that Longo "won't do much for you." *Id.* at 33 (¶¶ 271-72).

Inmates at Northern recreate outdoors five days per week, even in inclement weather. *Id.* at 36 (¶ 300). During recreation, inmates are cuffed behind their backs without shackles or a tether chain. *Id.* at 37 (¶ 301). Inmates frequently slip the cuffs and attack other inmates. *Id.* at 37 (¶ 302). During the ninety days Lexis was at Northern, he refused to go to recreation as he believed that being handcuffed behind his back for one hour would exacerbate his back pain, because Lexis had injured his back when he was hit by a vehicle in 2011, in addition to the back pain and spasms from his recent fall. *Id.* at 33-34 (¶¶ 275-78). When Lexis contacted the medical unit seeking an order to be handcuffed in front while outdoors, he was told it was a custody issue. *Id.* at 34 (¶¶ 279-80). Lexis asked Captain Lizon if the handcuffs could be placed in front, but Captain Lizon told Lexis, "that is never going to happen." *Id.* at 34 (¶¶ 281-82).

During his time at Northern, Lexis was unable to earn good time credit or parole and was unable to participate in transitional supervision or reentry programs to prepare him for release. *Id.* at 35 (¶ 287). He was not permitted to have his television, CD player, hot pot, or grease, and there was no hot water in his cell to prepare the food he purchased from the commissary. *Id.* at 35 (¶¶ 288-89). Lexis could only spend $25.00 in the commissary while inmates in the general population had a spending limit of $75.00, with a limit of $150.00 on holidays. *Id.* at 35 (¶ 290). There was no programming available, no access to G.E.D. or vocational education, no congregate religious services, and mental health is "inadequate and understaffed". *Id.* at 35-37 (¶¶ 291, 293, 299, 303). Lexis was required to brush his teeth with a security toothbrush that was the size of his little finger. *Id.* at 35 (¶ 292). He was permitted only three phone calls per week, while general population inmates receive six calls per day. *Id.* at 36 (¶ 294). He was required to

use the phone while wearing a tether chain connecting his handcuffs and leg shackles, which caused him to have to bend over to make calls, straining his back. *Id.* at 36 (¶¶ 295-96). When Lexis spoke to Captain Lizon about these conditions, Captain Lizon responded that the tether chains were required because the phones at Northern were not in cages. *Id.* at 36 (¶ 297). Only immediate family can visit at Northern so, unlike in general population, Lexis could not visit with his girlfriend. *Id.* at 36 (¶ 298).

On May 22, 2018, Lexis wrote to Captain Lizon again to ask to be placed on "rec alone" status at Walker Correctional Institute ("Walker") to ensure his safety. *Id.* at 35 (¶ 285). On May 31, 2018, Lexis was transferred to Walker for Phase 2 of the SRG program. *Id.* at 35 (¶ 286).

Lexis makes fourteen separate claims against the defendants: (1) claims against Warden Faucher for violating Lexis's rights under the First Amendment and the procedural and substantive due process clauses of the Fourteenth Amendment through supervisory liability by signing the incident report on March 7, 2018, long after Lexis had been sent to Northern; negligently managing his subordinates Dougherty, Bellemare, Conger, Ebgrle, Lorenzen, Schmidt, Messier, and Perkins; and creating a policy or custom that allowed unconstitutional practices to occur; (2) claims against Captain Dougherty for violating Lexis's rights under the First Amendment and the procedural and substantive due process clauses of the Fourteenth Amendment through supervisory liability by signing the incident report on February 8, 2018; negligently managing his subordinates Bellemare, Conger, Ebgrle, Lorenzen, Schmidt, Messier, and Perkins; and creating a policy or custom that allowed unconstitutional practices to occur; (3) claims against Lieutenant Bellemare for violating Lexis's rights under the First Amendment and the procedural and substantive due process clauses of the Fourteenth Amendment by retaliating against Lexis for his free speech and bringing Lexis to RHU, through supervisory liability by

negligently managing his subordinates Lorenzen, Schmidt, Messier, and Perkins; and creating a policy or custom that allowed unconstitutional practices to occur; (4) claims against Officer Lorenzen for violating Lexis's rights under the First Amendment and the procedural and substantive due process clauses of the Fourteenth Amendment by retaliating against Lexis for his free speech, giving him the SGRA ticket when he knew the administrative directive was vague, not giving Lexis fair notice that his words and language were prohibited, and coercing Lexis into making a statement before the hearing; and for violation of Lexis's rights under the Eighth Amendment by laughing during the strip search; (5) claims against Lieutenant Conger for violating Lexis's rights under the Eighth Amendment and the procedural and substantive due process clauses of the Fourteenth Amendment by signing and dating the RHU status order on February 13, 2018, prejudging the hearing, and conspiring with Lorenzen, Bellemare, and Ebgrle; (6) claims against Dave in Population Management, Dave the Director of Offender Classification, and the Director of Psychological Services for violating Lexis's rights under the Eighth Amendment and the procedural due process clause of the Fourteenth Amendment by failing to follow all procedures in AD 9.4 before placing Lexis in Northern; (7) claims against Lorenzen, Schmidt, Messier, Perkins, and Bellemare for violating Lexis's Eighth Amendment and equal protection rights by laughing during the strip search; (8) claims against Captain Lizon and Longo for violating Lexis's Eighth Amendment rights by confining him at Northern for 90 days without mental health care; (9) claims against Director of Security Whidden for violating Lexis's rights under the First Amendment and the procedural and substantive due process clauses of the Fourteenth Amendment through supervisory liability by negligently managing her subordinates Aldi, Dougherty, Faucher, Bellemare, Conger, and Ebgrle; and for perpetuating a policy or custom that allowed unconstitutional practices to occur; (10) claims against SRG

Coordinator Aldi for violating Lexis's rights under the First Amendment and the procedural and substantive due process clauses of the Fourteenth Amendment by telling Lorenzen that Lexis's words and language in his letter were associated with the Bloods; through supervisory liability by negligently managing his subordinates; and perpetuating a policy or custom that allowed unconstitutional practices to occur; (11) claims against Director of Security Santiago for violating Lexis's rights under the First Amendment and the procedural and substantive due process clauses of the Fourteenth Amendment by failing to respond to Lexis's request and upholding the SRG member designation; and through supervisory liability by negligently managing his subordinates Aldi, Lorenzen, Bellemare, Dougherty, Conger, Faucher, and Ebgrle; (12) claims against District Administrator Maldonado for violating Lexis's rights under the First Amendment and the procedural and substantive due process clauses of the Fourteenth Amendment by rejecting Lexis's appeal because it was too late and stating that Lexis's SRG status would remain; and negligently managing his subordinates; (13) claims against Ebgrle for violating Lexis's rights under the First Amendment, Eighth Amendment, and the procedural and substantive due process clauses of the Fourteenth Amendment by denying Lexis an opportunity to be heard and present documentary evidence; and through supervisory liability for the actions of Officer Lorenzen; and (14) claims for intentional infliction of emotional distress against Lorenzen, Bellemare, Messier, Perkins, and Schmidt for the strip search; against Lorenzen, Bellemare, Ebgrle, Conger, and Aldi for sending a subordinate to designate him an SRG member without sufficient evidence and violating his rights to free speech and substantive due process; against Dougherty and Faucher for lack of oversight; and against Dave in Population Management, Dave in Offender Classification, and the Director of Psychological Services for sending him to Northern without mental health clearance. *Id.* at 43-47.

Defendants move to dismiss as follows: (1) all claims Lexis failed to exhaust as required by the Prison Litigation Reform Act ("PLRA"); (2) all Fourth and Eighth Amendment claims relating to the strip search; (3) all equal protection claims; (4) all First Amendment retaliation claims; (5) all procedural and substantive due process claims against Bellemare; (6) all substantive due process claims against all defendants; (7) the Eighth Amendment claim against Ebgrle regarding Lexis's conditions of confinement at Northern; (8) all conspiracy claims against all defendants; (9) all claims based on violation of DOC directives; (10) all supervisory liability claims against Faucher, Dougherty, Conger, Whidden, Santiago, and Maldonado; (11) all intentional infliction of emotional distress claims; and (12) Counts 6 and 8 as improperly joined in this action. Defendants seek dismissal of these claims for failure to exhaust administrative remedies, failure to state a cognizable claim for relief, or because defendants are protected by qualified immunity. Doc. #45-1 at 1.

**DISCUSSION**

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As the Supreme Court has explained, this "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ibid.* In other words, a valid claim for relief must cross "the line between possibility and plausibility." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

In addition, a complaint cannot rely on conclusory allegations. *See Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). A complaint that engages in a threadbare recital of the elements of a cause of action but that fails to include supporting factual allegations does not

establish plausible grounds for relief. *Ibid.* In short, a court's role when reviewing a motion to dismiss under Rule 12(b)(6) is to determine if the complaint—apart from any of its conclusory recitals—alleges enough facts to state a facially plausible claim for relief.

If the plaintiff is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Because Lexis's claims fall into a number of broad categories—namely, the Fourteenth Amendment substantive and procedural due process claims and the associated supervisory liability and conspiracy claims; the First Amendment retaliation claim; the Eighth Amendment strip search claim; the equal protection claim; the Eighth Amendment claim against Lieutenant Ebgrle; the Eighth and Fourteenth Amendment claims concerning Lexis's placement at Northern; the Eighth Amendment claim concerning the conditions of confinement at Northern; and the intentional infliction of emotional distress claim—I will consider each category one by one after addressing the issue of whether any such claims are barred for failure of administrative exhaustion.

***Exhaustion of Administrative Remedies***

The PLRA states that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory. *See Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). It applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes,

and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative procedures must occur regardless of whether the procedures can provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 740-41 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). "Where the record clearly establishes Plaintiff's failure to exhaust, and in the absence of 'any special circumstances justifying his failure to exhaust,' dismissal is appropriate." *Turnage v. Dzurenda*, 2015 WL 4978486, at *4 (D. Conn. 2015) (citing *Yeldon v. Ekpe*, 159 F. App'x. 314, 316 (2d Cir. 2005)).

The general inmate grievance procedure is set forth in AD 9.6. Section 4(D) states that "[a]n appeal of a Security Risk Group Member designation shall be in accordance with Section 9 of this Directive." Section 9 states that "[a]n initial Security Risk Group Member designation may be appealed by completing and depositing CN 9602, Inmate Administrative Remedy Form, in the Administrative Remedies box within 15 calendar days of the notice of designation. . . . The decision of the District Administrator shall not be subject to further appeal."

Lexis entered a guilty plea at the hearing on February 15, 2018, and he had fifteen days, or until March 2, 2018, to submit his appeal of his SRG member designation. Lexis states that he wrote a letter to the Deputy Commissioner on April 6, 2018, and that the Deputy Commissioner forwarded the letter to District Administrator Maldonado, who handles all SRG appeals. Doc. #33 at 39 (¶ 325). Lexis also states in his opposition to the motion to dismiss that he appealed his SRG member designation on April 9, 2018, Doc. #49 at 6 (¶ 8), though the appeal he attaches as an exhibit to his proposed second amended complaint appears to be dated April 4, 2018, *see* Doc. #34-1 at 48-50.

Lexis failed to timely file his appeal of his SRG member designation. Proper exhaustion of administrative remedies "demands compliance with an agency's deadlines," *Woodford*, 548 U.S. at 90, and Lexis did not file his appeal until more than a month after the deadline. Lexis does not contend that the appeal process was unavailable to him within the stated timeline or that he was somehow prevented from timely filing his appeal. In other words, Lexis does not plead any "special circumstances" that excuse his failure to timely file an appeal. *See Davis v. New York*, 311 F. App'x. 397, 399 (2d Cir. 2009). Lexis instead asserts that he has exhausted his remedies because "[t]here is nothing else [he] can do to exhaust [his] remedies and the only step left is to seek recourse in the federal court." Doc. #49 at 6. But this is incorrect. Lexis had the appropriate administrative remedy available to him yet failed to exercise it within the deadline. *See Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (noting in a habeas proceeding for a state prisoner that a petitioner "cannot claim to have exhausted his or remedies by dint of no longer possessing 'the right . . . to raise, by any available procedure, the question presented,'" including where the petitioner has allowed the period for filing an appeal to lapse).

In his appeal, Lexis wrote that he was appealing his SRG member designation and included his claims that Officer Lorenzen violated AD 10.7 because he both made the initial mailroom review and issued the disciplinary report, that Officer Lorenzen assumed that the person Lexis was corresponding with was associated with the Bloods, and that he wanted the disciplinary report to be thrown out. Doc. #34-1 at 49.[3] The appeal does not mention the specific terms "stack 9" and "I lead, heads follow" for which Lexis now asserts he was retaliated against

---

[3] On a motion to dismiss, a court "may properly take notice of documents outside of the four corners of the complaint" as long as the plaintiff had notice of the documents. *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 886 F.Supp. 377, 381 (S.D.N.Y. 1995) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)). While Lexis's second amended complaint is not the operative complaint, he clearly had notice of his own appeal submitted to contest his SRG member designation.

in violation of his First Amendment rights, nor does it mention the failure to conduct a mental health evaluation before Lexis was transferred to Northern. *Id.*

Still, it is not readily apparent to me that Lexis failed to exhaust his lack of mental health evaluation claim or his First Amendment retaliation claim, and they are not precluded by his failure to timely exhaust. On the other hand, all substantive and procedural due process claims and the associated supervisory liability and conspiracy claims related to Lexis's SRG member designation are dismissed for failure to properly exhaust administrative remedies.

***First Amendment retaliation***

The First Amendment protects prison inmates from being subject to retaliation on the basis of an inmate's engagement in protected free speech activity. In order to state a claim for First Amendment retaliation, a prisoner plaintiff must allege facts showing (1) that he engaged in activity that is protected under the First Amendment, (2) that a prison official took an adverse action against him, and (3) that the prisoner's First Amendment activity caused the prison official to engage in the adverse action. *See, e.g.*, *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). An adverse action is conduct of sufficient magnitude that it would deter a similarly situated person of ordinary firmness from exercising his right to speech. *See Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019).

Lexis alleges that Officer Lorenzen's issuance of the disciplinary ticket and Lexis's subsequent SRG member designation was in retaliation for his use of the terms "stack 9" and "I lead, heads follow" in his outgoing correspondence and phone calls. Officer Lorenzen took Lexis's language to mean that Lexis was a member of the Bloods, although Lexis asserts that the terms are from rap lyrics and a book, respectively, and that he only used the term "stack 9" to be funny.

It appears that Lexis engaged in speech and that Officer Lorenzen took adverse action against him by issuing a disciplinary ticket. Further, Lexis's allegations show that Officer Lorenzen used his speech in letters and phone calls as evidence of his gang affiliation. But the First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993); *United States v. Herron*, 762 F. App'x 25, 30 (2d Cir. 2019) (same). Lexis's letters and phone calls were merely used as evidence to support his SRG member designation. In the absence of an allegation that Officer Lorenzen sought to punish or retaliate against Lexis simply for engaging in First Amendment-protected expression, the complaint does not plausibly allege a First Amendment retaliation claim. *See Caves v. Payne*, 2020 WL 1676916, at *4 (D. Conn. 2020) (dismissing First Amendment retaliation claim where the "defendants' use of social media posts and [plaintiff]'s own statements therein, is no different than if [plaintiff] announced upon his arrival at the facility that he was a gang member and the defendants used those statements to designate him to the SRG unit."). Accordingly, I will dismiss Lexis's First Amendment claim.

***Strip search***

Defendants move to dismiss Lexis's Fourth and Eighth Amendment claims relating to the strip search that occurred on February 6, 2018. Lexis concedes that the Fourth Amendment claim should be dismissed. Doc. #49 at 7. However, he maintains that the laughter during the strip search constitutes malicious and sadistic conduct intended to intimidate, embarrass, and humiliate him in violation of his rights under the Eighth Amendment. *Id*. at 6-7.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" by prison officials on prisoners. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). Eighth Amendment claims have two elements, one subjective and one objective. *Crawford v. Cuomo*, 796 F.3d 252,

256 (2d Cir. 2015). "First, the prisoner must allege that the defendant acted with a subjectively 'sufficiently culpable state of mind.' Second, he must allege that the conduct was objectively 'harmful enough' or 'sufficiently serious' to reach constitutional dimensions." *Ibid.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). Further, "[i]n determining whether an Eighth Amendment violation has occurred, the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Ibid.* at 257-58. Strip searches "may not be undertaken maliciously or for the purposes of sexually abusing an inmate." *Id.* at 258.

The Supreme Court has held that body-cavity searches of the kind Lexis describes can be constitutional. *See Bell v. Wolfish*, 441 U.S. 520, 560 (1979). Additionally, Lexis admits that "it is legal" for officers to require him to "squat, bend over, cough & spread [his] buttocks" for the purposes of a strip search, and further does not allege that any of the defendants physically touched him. Doc. #33 at 11 (¶ 4). Indeed, Lexis alleges that the strip search was conducted when he was brought to the RHU, *id.* at 11 (¶ 1), and AD 6.7 requires a strip search whenever an inmate is placed in restrictive housing. The strip search itself was not conducted without justification or only for the purposes of intimidation or humiliation and is therefore not a violation of Lexis's rights under the Eighth Amendment.

The only remaining basis of Lexis's claim is that the defendants' laughter and snickering was "made to harass and humiliate" him and that he was uncomfortable, angry, depressed, and humiliated, and felt extreme emotional distress as a result. *Id.* at 11-13 (¶¶ 8-9, 19, 22). Generally, *de minimis* or "nonmeasurable pain" is not actionable under the Eighth Amendment. *Hudson*, 503 U.S. at 17 (Blackmun, J., concurring). While it is true that "psychological pain can

be more than *de minimis*," *ibid.*, the defendants' laughter alone was not objectively "sufficiently serious" to reach constitutional dimensions, *see Show v. Patterson*, 955 F. Supp. 182, 191-92 (S.D.N.Y. 1997) (rejecting Eighth Amendment claim where guards laughed and name-called during a strip search); *Jermosen v. Coughlin*, 1993 WL 267357, at *6 (S.D.N.Y. 1993) (finding threats and the "deliberate[] inflict[ion of] mental pain, anguish, embarrassment and humiliation" during a strip frisk to be *de minimis* psychological pain), *aff'd*, 41 F.3d 1501 (2d Cir. 1994). Accordingly, I will dismiss Lexis's Eighth Amendment claim and all associated supervisory liability claims.

***Equal Protection***

Defendants contend that Lexis fails to state a cognizable equal protection claim regarding the strip search. Doc. #45-1 at 16-17. In his opposition, Lexis states he has supported his "class of one" equal protection claim with affidavits from inmates in the SRG program whom he alleges are similarly situated to him but have not been laughed at during a strip search. Doc. #49 at 7-8.

A violation of the Equal Protection Clause may occur when a governmental classification singles out solely the plaintiff as a "class of one" for disparate treatment. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 29 n.8 (2d Cir. 2018). To state a successful "class of one" claim, a plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Not all different treatment, however, will support an equal protection claim. Isolated incidents of verbal harassment of a prisoner do not support an equal protection claim. *See Stone v. Eamer*, 2018 WL 557872, at *7 (N.D.N.Y. 2018) (citing cases). Courts in the Second Circuit

have held that verbal harassment is insufficient to support an equal protection claim. *See, e.g.*, *Khalifa v. City of New York*, 2019 WL 1492905, at *4 (E.D.N.Y. 2019) (granting summary judgment on equal protection claim based on verbal harassment that included racial epithets); *Ali v. Connick*, 136 F. Supp. 3d 270, 276 (E.D.N.Y. 2015) (noting that verbal harassment is insufficient to support equal protection claim but verbal harassment accompanied by physical injury may be sufficient); *Tajeddini v. Gluch*, 942 F. Supp. 772, 781 (D. Conn. 1996) (granting summary judgment on equal protection claim based on verbal harassment by correctional officers).

Lexis alleges that correctional staff have laughed and snickered at him during two different strip searches, one in February 2018 and another in November 2018. These incidents happened at different correctional facilities with different correctional staff, and the individuals allegedly involved in the second incident are not named as defendants in this action. Doc. #33 at 13-14 (¶¶ 25-32). Lexis alleges no other injury. These isolated incidents of verbal harassment are insufficient to support an equal protection claim. Accordingly, I will dismiss Lexis's equal protection claim.

***Eighth Amendment claim against Lieutenant Ebgrle***

Lexis also asserts an Eighth Amendment claim against Lieutenant Ebgrle for sending Lexis to Northern, which Lexis alleges worsened his mental health. To state an Eighth Amendment claim based on the conditions of confinement, a plaintiff must allege that: "(1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities,' and (2) subjectively, the defendant official acted with 'a sufficiently culpable state of mind, . . . such as deliberate indifference to inmate health or safety." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Gaston v. Coughlin*, 249

F.3d 156, 164 (2d Cir. 2001)). The defendants contend that Lexis has not set forth sufficient facts to support such a claim. Doc. #45-1 at 25.

I agree with the defendants. Lexis alleges only that Lieutenant Ebgrle presided over the SRG hearing at which he told her about his mental illness and his belief that he should not be sent to Northern. Lexis alleges no facts suggesting that the hearing officer determines where an SRG inmate will be placed. Moreover, Directive 6.14, section 7(C) provides that the placement is determined by the SRG Review Committee. As Lexis alleges no facts suggesting that Lieutenant Ebgrle is a member of the committee, or that she has the authority to determine his placement, Lexis has not alleged facts showing that Lieutenant Ebgrle was deliberately indifferent to his health or safety. Accordingly, I will dismiss Lexis's Eighth Amendment claim against Lieutenant Ebgrle.

***Joinder of Northern claims***

In two counts, Lexis includes claims relating to his transfer to and confinement at Northern. In Count Six, Lexis contends that Dave in Population Management, Dave the Director of Offender Classification, and the Director of Psychological Services failed to obtain the mental health clearance required under prison directives before transferring him to Northern. In Count Eight, Lexis contends that Captain Lizon and Longo denied him mental health services while he was confined at Northern. The defendants argue that Counts Six and Eight are improperly joined under Rule 20 because they incorporate defendants and claims that stem from his experience at Northern rather than Corrigan, from where his other claims stem.

Rule 20 of the Federal Rules of Civil Procedure provides that persons may be joined in one action as defendants if (a) the claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" and (b) "any question of law or fact common to all

defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "What will constitute the same

transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case

basis." *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y.

2008). As the Second Circuit has observed in the Rule 13 context, the determination of what

constitutes the same "transaction or occurrence" requires courts to look to the "logical

relationship" between claims to determine "whether the essential facts of the various claims are

so logically connected that considerations of judicial economy and fairness dictate that all the

issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).

It is apparent that the complaint fails to comply with the limits of Rule 20 on joinder of

claims against multiple defendants. Lexis's claims largely fall into two categories: (1) his SRG

member designation and claims related to that designation process, *i.e.*, his First Amendment

retaliation claim and his strip search claim; and (2) his experience at Northern. That latter

category concerns the constitutionality of the procedure by which Lexis was placed at Northern

and the conditions of his confinement at Northern. Both claims are against defendants who are

not implicated by the SRG member designation category of claims. While Lexis's confinement

at Northern was the eventual result of the SRG member designation process, the facts of each

category of claims do not arise out of the same transaction or occurrence, nor are there questions

of law and fact common to all defendants.

Indeed, Lexis's claims concern different defendants at different prisons. *See Carilli v.

Semple*, 2020 WL 2097741, at *4 (D. Conn. 2020) (finding that claims were not properly joined

in part because they occurred at two separate prisons). I therefore conclude that Counts Six and

Eight are not properly joined in this action and that the amended complaint does not comply with

Rule 20. In these circumstances, a plaintiff is "required to file separate lawsuits against each

defendant or against each group of defendants who acted in concert with one another or as to whom plaintiff's claims are logically connected to one another." *Tuttle v. Semple*, 2017 WL 5711397, at *2 (D. Conn. 2017).

If a complaint is dismissed for failure to comply with joinder rules, courts generally grant leave to amend the complaint. *See, e.g.*, *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Accordingly, Lexis may file a separate complaint or multiple complaints containing his claims concerning his experience at Northern, each of which comply with Rules 8 and 20 of the Federal Rules of Civil Procedure. The complaint(s) should include only related claims and shall list only the defendants involved in those claims in the case caption.

***Intentional infliction of emotional distress***

As the Court has dismissed all of Lexis's federal law claims, the Court declines to exercise supplemental jurisdiction over any state law claims, including the intentional infliction of emotional distress claim, pursuant to 28 U.S.C. § 1367.

## CONCLUSION

For the foregoing reasons, the motion to dismiss (Doc. #45) is GRANTED as to all substantive and procedural due process claims and the associated supervisory liability and conspiracy claims relating to Lexis's SRG member designation; the First Amendment retaliation claim; the Fourth and Eighth Amendment strip search claim; the equal protection claim; the Eighth Amendment claim against Lieutenant Ebgrle; the Eighth and Fourteenth Amendment claim concerning Lexis's placement at Northern; the Eighth Amendment claim concerning the conditions of confinement at Northern; and the intentional infliction of emotional distress claim. Consistent with any statute of limitations, Lexis may file a separate complaint concerning his

placement and treatment at Northern that complies with the Federal Rules of Civil Procedure. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 30th day of November 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge